UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK MEDEARIS,<br><br>Defendant. | 3:20-CR-30077-RAL<br><br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTIONS TO SUPPRESS |

Defendant Patrick Medearis ("Medearis") filed a Motion to Suppress, Doc. 38, and Supplemental Motion to Suppress, Doc. 45, concerning two search warrants that were executed on different residences on April 22, 2020, and statements Medearis made to law enforcement on April 27, 2020. Medearis argues that the search warrants were defective and thus seeks suppression of all evidence seized by law enforcement. Medearis also contends the statements he made to law enforcement were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and were involuntary. He further seeks suppression of the results of a urinalysis. In Medearis's supplement, he requests a Franks hearing. Doc. 45.

United States Magistrate Judge Mark A. Moreno held an evidentiary hearing and issued a Report and Recommendation recommending that Medearis's Motions to Suppress be denied. Doc. 59. Medearis filed objections to the Report and Recommendation. Doc. 64. For the reasons set forth below, and based on a full, *de novo* review of the files, transcript and records, this Court

adopts the Report and Recommendation, Doc. 59.  Medearis's Motion to Suppress, Doc. 38, and Supplemental Motion to Suppress, Doc. 45, are denied.

### I. Facts Relating to the Motions to Suppress

On July 16, 2020, Medearis was indicted for felony possession of a firearm under 18 U.S.C. §§ 922(g)(1), 922(g)(3), 924(a)(2), and 924(d).  Doc. 1.  The indictment alleges that Medearis did knowingly possess a 12-gauge shotgun and .22 caliber rifle on or about April 22, 2020, in Todd County, South Dakota.  Doc. 1.

On April 21, 2020, Rosebud Sioux Tribe Law Enforcement Services received a call from Kara Ford stating that Medearis was following her vehicle, had a gun, and was shooting at her and the occupants in the car including her children and India Ford, Kara's sister. T. 13–14, Ex. 2.  India Ford had been in a relationship with Medearis and has a child with him. T. 27, 33, Doc. 64 at 2. Rosebud Sioux Tribe Law Enforcement Officer Gerald Dillon ("Dillon"), Officer Joshua Antman ("Antman") and Special Agent Ben Estes ("Estes") interviewed India Ford later that day.  T. 14–15, 27, Ex. 3.  The following day, April 22, 2020, Dillon received a text message from Kara Ford's phone, stating that Medearis was at India Ford's residence in South Antelope attempting to break in.  T. 15.  Dillon, who was off duty at the time, alerted other law enforcement and proceeded to respond.  T. 15.  On route, Dillon received a text from Kara Ford indicating that Medearis had left the residence in a red Monte Carlo and had traveled to his father Robert Medearis's residence south of Mission, South Dakota.  T. 15–16.

When Dillon arrived at the Robert Medearis residence, he saw the red Monte Carlo and observed Medearis get onto a four-wheeler, subsequently leading law enforcement on a pursuit. T. 16–17.  Medearis eventually returned, driving through a fence on the four-wheeler before getting into a different vehicle, a silver Pontiac Grand Prix, and again fleeing the residence.  T. 17,

42.  Medearis was apprehended when the vehicle became hung up on a fence in a ditch north of his father's residence.  T. 17.  He was transported to Indian Health Services in Rosebud and eventually airlifted to Rapid City for emergency medical care.  T. 43.  Law enforcement searched the vehicle after his arrest and retrieved firearms, ammunition, and marijuana.  T. 17.

After the car chase, Dillon returned to the police department and finished drafting an affidavit and proposed search warrant that he had already begun to prepare for an investigation into Medearis's alleged criminal activity.  T. 19.  The proposed search warrant focused on two homes—Robert Medearis's residence in Mission and the residence shared by Medearis and India Ford in South Antelope—and sought urine samples from Medearis and India Ford. T. 19–20.  To support a determination of probable cause, the affidavit drew from multiple interviews conducted by law enforcement between April 13, 2020 and April 19, 2020,[1] which provided evidence that Medearis and India Ford were involved in distributing methamphetamine and that Medearis possessed guns. Ex. 7.

The affidavit in support of the search warrant did not discuss the events that occurred on April 21 or 22, 2020.  Dillon stated that the failure to include information related to the events of April 21 and 22, 2020 was due to his haste to finish the search warrant as other officers remained at the scene securing it until a search warrant was obtained.  T. 21, 49, 61.  Dillon testified that he waited outside the tribal judge's office as he reviewed the request for approximately 20 to 25 minutes.  T. 46–47.  The tribal judge granted the search warrant and law enforcement executed the

---

[1]  The affidavit submitted with the search warrant listed March 19, 2020, as the date law enforcement observed and stopped an individual found with marijuana and a mirror with white residue after leaving Medearis and India Ford's residence in South Antelope.  T. 20–22; Ex. 7 at ¶ 6.  Dillon testified during the suppression hearing that the affidavit should have listed the date as April 19, 2020. T. 21.

warrant at Robert Medearis's residence in Mission later that morning and at Medearis and India

Ford's residence in South Antelope later that same day.  T. 22–24; Ex. 8.

Five days later, on April 27, 2020, just after midnight, law enforcement attempted to stop

Medearis, who subsequently led police on another car chase involving speeds exceeding 100 miles

per hour.  Ex. 15–16.  Medearis was eventually stopped after police deployed a spike strip to slow

his vehicle.  Ex. 15–16.  After Medearis fell out of his vehicle, he was arrested by law enforcement

who observed a shallow self-inflicted wound on Medearis's neck which was bandaged at the scene.

Ex. 15–16.  That same day at approximately 9:40 a.m., after Medearis had been medically cleared,

Antman and Estes interviewed Medearis at the tribal correctional facility. Ex. 19.

After introducing themselves and gathering basic biographical information from Medearis,

Estes read Medearis the <u>Miranda</u> warnings, after which the following exchange took place:

> Estes: Do you understand what I read to you?
> Medearis: Yeah.
> Estes: Do you have any questions?
> Medearis: Yeah.
> Estes: What questions do you have that I, pertaining to what I just read to
> you?
> (11 second pause)
> Estes: You don't have any?
> Medearis: Go ahead.
> Estes: Okay, the waiver of rights portion, do you want to read it out loud,
> and read, read this part?
> Medearis: I, I need my glasses.
> Estes: Okay, it just, it just says that "I have read this statement of my rights
> and I understand what my rights are. At this time, I am willing to answer questions
> without a lawyer present." Do you agree with that? Did you want to talk to us?
> Medearis: Yeah, I do, but-
> Estes: Okay, if you do, go ahead and sign it here, it's up to you.
> Medearis: Waiver of rights, hmm.
> Antman: And you can still stop the interview whenever you want.
> Medearis: Yeah.
> Antman: If there's, if there's a particular question we're asking and you
> don't want to answer it, you don't have to answer if you don't want to. It just tells
> us that you know your rights and you're agreeing to answer any questions without
> a lawyer present.

> Medearis: It feels like I'm breathing out of my neck.
> Estes: Hmm?
> Medearis: It feels like I'm breathing out of my neck, like air. Oh, but –
> Estes: If you agree to talk to us, if you do, then, without a lawyer present, just go ahead and sign it right there.
> Medearis: Probably sign it, and if that [profanity] gets out in the [profanity] free world, I'm [profanity]. I know that. Kick his [profanity] again, it still looks all [profanity] up, eh?
> Estes: Did you want to talk to us later on today? You want us to come back later on today? It's up to you.
> Medearis: Let's just talk, let's go.
> Estes: Okay, if you agree to talk to us without a lawyer present, just sign it right there.
> Medearis: How about I initial it?
> Estes: Okay.

Ex. 21 at 00:00–06:21. After Medearis initialed the form, Estes and Antman questioned him for a little more than a half hour. Ex. 18-19, 21. They asked him about his possible involvement with drugs and guns as well as violent acts against India Ford. Ex. 21 at 9:20–10:35 (guns), 10:38–11:00 (drugs), 11:02–15:40 (drugs/guns), 16:25–17:00 (guns), 17:04–18:25 (drugs), 18:26–19:19 (guns), 21:02–21:33 (drugs), 22:10–23:09 (drugs), 23:57–26:16 (guns), 29:50–30:10 (violence/guns), 30:40–32:18 (drugs), 33:25–35:02 (drugs/guns), 35:02–37:38 (drugs), 37:49–38:33 (guns). When Medearis requested a lie detector test, officers ended the interview. Ex. 21 at 38:35.

Medearis moved to suppress evidence obtained via the search warrants and statements he made during the interview. Doc. 38. Medearis also requested a Franks hearing. Doc. 45. The United States opposed the motions. Docs. 41, 50. After Magistrate Judge Moreno issued his Report and Recommendation, Doc. 59, Medearis filed objections, Doc. 64.

**II. Standard of Review**

In considering a magistrate judge's recommendation on a dispositive matter, such as a motion to suppress evidence, a district court must make a "de novo determination of those portions

of the report or ... recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  A *de*

*novo* review requires a district court to make its own determination of disputed issues. See United

States v. Portmann, 207 F.3d 1032, 1033 (8th Cir. 2000).

### III. Discussion

#### A. Search Warrant

Medearis objects to the Report and Recommendation's finding that law enforcement

established the probable cause necessary to search the residences located in Mission and South

Antelope.  Doc. 64 at 4–7, Ex. 7.  Medearis objects to the accuracy of the events relayed by several

of the confidential witnesses including: (1) the location of Medearis's residences, (2) the time and

location regarding when and where Medearis possessed guns, (3) the hearsay nature of certain

evidence, (4) the familial relationships between some of the confidential informants, and (5) the

substance abuse, health, and legal issues of several of the witnesses.  Doc. 64 at 4–7.

#### 1. The Leon good-faith exception

Even if there is a defect in the warrant concerning probable cause or particularity, this Court

agrees with the Report and Recommendation's analysis that the Leon good-faith reliance exception

would apply and thus any evidence seized at the two residences is admissible.[2]  See United States

v. Leon, 468 U.S. 897 (1984).  "Under the good-faith exception, evidence seized pursuant to a

search warrant that lacked probable cause is admissible if the executing officer's good-faith

---

[2] Although the Court evaluates the substance of Medearis's objections to issuance of the search
warrant, courts are authorized to first review whether the good-faith exception to the exclusionary
rule applies before evaluating whether probable cause exists. See Perry, 531 F.3d at 665; see also
United States v. Harris, No. 20-CR-98 (SRN/TNL), 2021 WL 3929270, at *4 (D. Minn. Sept. 2,
2021); United States v. Stephen, No. 18-CR-31-CJW, 2018 WL 4839065, at *12 (N.D. Iowa Oct.
4, 2018) ("*Leon* good-faith exception applies to the assertion that the warrant was overbroad with
the same force and effect as it does to the assertion that the warrant lacked probable cause), aff'd,
984 F.3d 625 (8th Cir.), cert. denied, 2021 WL 4508830 (U.S. Oct. 4, 2021) (No. 21-5163).

reliance on the warrant is objectively reasonable." United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008). "The operative test is whether a reasonably well trained officer would have known that the search was illegal." United States v. Mayweather, 993 F.3d 1035, 1041 (8th Cir. 2021) (cleaned up and citation omitted). In the Eighth Circuit, this requires assessing the totality of the circumstances, "including any information known to the officers but not presented to the issuing judge." Perry, 531 F.3d at 665 (cleaned up and citation omitted).

"[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . ." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012). Therefore, in general, an officer cannot be expected to question a magistrate's probable cause determination, Leon, 468 U.S. at 921; however, Leon outlines four situations where an officer's reliance on a warrant would be unreasonable:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable;* and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007) (cleaned up and citation omitted).

The standard used in the first exception is discussed in the Franks hearing section of this Opinion and Order, but there is no evidence that Officer Dillon intentionally omitted, misrepresented, or recklessly disregarded the truth and thereby mislead the judge. Indeed, Dillon could have and indeed should have included in the affidavit information involving events on April 21 and 22, which would have made the issuance of such a search warrant even more compelling. That is, Dillon's principal omissions are largely to Medearis's benefit, and Dillon did not recklessly disregard the truth or otherwise mislead the judge.

7

Regarding the second exception, there is no evidence that the issuing judge wholly abandoned his judicial role. Dillon testified that the reviewing judge spent approximately 20 to 25 minutes and reviewed each page of the affidavit. T. 46–47. And as discussed in the next section, there was information presented in the affidavit to establish probable cause and particularity such that neither the third nor fourth exception apply. See Mayweather, 993 F.3d at 1041 (applying the good-faith exception because the issuing judge reasonably assumed evidence of drug trafficking was located at drug trafficker's residence); United States v. Williams, 976 F.3d 807, 810 (8th Cir. 2020) (same); see also United States v. Saddler, 19 F.4th 1035, 1040 (8th Cir. 2021) (warrant lacking particularly upheld under the good-faith exception).

There is a valid argument that the affidavit failed to establish probable cause to search the Mission area home of Robert Medearis, although the affidavit left little doubt of cause to search the South Antelope home that Medearis and India Ford shared. The probable cause to search Robert Medearis's home is unclear from Dillon's affidavit, which only implicitly suggested that Medearis might live at Robert Medearis's home. Doc. 61 at 62; Ex. 1 at 3-4 (affidavit stating that Medearis "lives south of Mission," which might be a reference to the general location of Robert Medearis's home). This likely is not enough evidence to find probable cause to search Robert Medearis's residence in jurisdictions that only consider the affidavit itself in the Leon good faith analysis. See, e.g., United States v. Knox, 883 F.3d 1262, 1272 (10th Cir. 2018) (holding "a suppression court's assessment of an officer's good faith is confined to reviewing the four corners of the sworn affidavit and any other pertinent information actually shared with the issuing judge"); United States v. Koerth, 312 F.3d 862, 871 (7th Cir. 2002) (same); United States v. Hove, 848

F.2d 137, 140 (9th Cir. 1988) (same).  However, the Eighth Circuit[3] has a different approach to

the Leon good faith analysis, allowing consideration of information the officers knew, but did not

include in the search warrant request. Perry, 531 F.3d at 665; United States v. Marion, 238 F.3d

965, 969 (8th Cir. 2001).

As the Report and Recommendation outlines, Doc. 59 at 17, beyond what was set forth in

Dillon's affidavit, law enforcement knew the following:

- When Medearis and India Ford were "on the outs," Medearis went and stayed at his father's residence. T. 50, 71.  Otherwise, the two lived together in South Antelope. T. 71.

- Medearis was a felon who could not possess firearms. Exs. 6, 10.

- On April 21, 2020, Medearis chased India Ford and shot a pistol in the air. Ex. 4 at 1–2.

- During the April 21 interview at the Tripp County Sheriff's Office, India Ford provided information on the incident where Medearis accused someone of breaking into his Monte Carlo and stealing his methamphetamine and marijuana. Ex. 4 at 2–3.

- India Ford also described the incident where Medearis struck her in the head with a pistol and stated that "Pat [Medearis] was trying to be a drug lord." Ex. 4 at 3.

- India Ford disclosed that Medearis had a black shotgun in his silver Grand Prix, that he sold "smaller bags" of methamphetamine from the house, and that "the last time she saw Pat [Medearis] with meth was last week," but he had been "out of meth" recently. Ex. 4 at 3–4.

- After Medearis's flight on the four-wheeler and in the silver Grand Prix from his father's residence, officers discovered a black shotgun, a rifle, ammunition, drug paraphernalia, 32 grams of marijuana, and knives on Medearis's person and in his Grand Prix. Ex. 6.

Even if the affidavit does not establish probable cause that evidence of a crime would be

found at Robert Medearis's residence, Dillon knew sufficient information that would have

established probable cause, but was not presented to the tribal judge.  Therefore, based upon the

---

[3] The Fourth and Eleventh Circuits follow the same approach as the Eighth Circuit in allowing consideration of information known to the officers who executed the warrant but inadvertently not disclosed to the issuing judge. See United States v. McKenzie-Gude, 671 F.3d 452, 460 (4th Cir. 2011); United States v. Robinson, 336 F.3d 1293, 1297 n.6 (11th Cir. 2003).

Eighth Circuit's totality of the circumstances analysis which includes considering "any information known to the officers but not presented to the issuing judge," United States v. Simpkins, 914 F.2d 1054, 1057 (8th Cir. 1990), the affidavit was not so lacking in indicia of probable cause to be entirely unreasonable nor was the warrant so facially deficient that law enforcement could not reasonably presume the warrant was valid.  As none of the Leon exceptions apply, the warrant was executed in good faith, and the evidence seized from the execution of the warrant including from Robert Medearis's residence is not subject to suppression.

## 2. Probable cause and particularity

Medearis challenges whether there was sufficient probable cause to issue the search warrant. Doc. 39 at 5.  He also contends the warrant lacked particularity. Doc. 39 at 7.  The Fourth Amendment to the United States Constitution guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  "Probable cause exists when there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (cleaned up and citation omitted).

Affidavits used to establish probable cause "are reviewed using the totality of circumstances analysis" and "must be read in a common-sense and realistic fashion." Id. (cleaned up and citations omitted).  "In determining whether probable cause exists, [courts] do not evaluate each piece of information independently; rather, [courts] consider all of the facts for their cumulative meaning." United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001).  "Deference is accorded an issuing magistrate's probable cause determination." Gladney, 48 F.3d at 312. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for

concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (cleaned up).

Here, given the deference afforded the issuing judge, the affidavit establishes a substantial basis that probable cause existed to issue a warrant to search the residences for contraband or evidence of a crime. The affidavit described five reasons to establish probable cause:

(1) On April 19, 2020, a vehicle was stopped after leaving India Ford and Medearis's residence in South Antelope. A K9 unit alerted law enforcement to the presence of narcotics in the vehicle. A search of the vehicle revealed three grams of marijuana and a folding mirror with a white residue that tested positive for methamphetamines. Doc. 61 at 62.

(2) On April 19, 2020, a confidential source was interviewed by law enforcement. The confidential source informed law enforcement that they saw Medearis (who has a prior felony conviction) with three pistols and a rifle the previous day on April 18, 2020—specifically "a .38 caliber pistol, 9mm pistol, 45 pistol and a 22 caliber rifle." Doc. 61 at 63. The source stated that if law enforcement "wanted to stop the drugs," it should watch "Medearis along with other residences." Doc. 61 at 62-63.

(3) On April 17, 2021, a custodial interview was conducted following a traffic stop. Doc. 61 at 63. The interviewee reported that Medearis and India Ford "have been reported to have been around with a lot of drugs." Doc. 61 at 63. The interviewee reported that Medearis and India Ford lived at a residence in South Antelope that law enforcement associated with them and "that there is constant traffic, people going in and out at all hours of the night" at the residence. Doc. 61 at 63-64. The interviewee also reported hearing that Medearis had assaulted India Ford by "pistol whipping" her. Doc. 61 at 63. The interviewee reported seeing knots on the top of India Ford's

head. Doc. 61 at 63. The interviewee also reported seeing Medearis with a pipe at his residence when he returned on a four-wheeler. Doc. 61 at 64.

(4) On April 14, 2020, during a telephone interview, an interviewee reported that Medearis was "bring[ing] stuff in" with another individual. Doc. 61 at 64. The interviewee described Medearis as driving a silver Pontiac Grand Prix. Doc. 61 at 64. The interviewee reported that they were "pretty sure" Medearis carried a gun and that Medearis had threated the interviewee with a gun. Doc. 61 at 64. The interviewee also reported that Medearis and India Ford were "strung out." Doc. 61 at 64.

(5) On April 13, 2020, an interviewee reported that they had observed Medearis fire a gun while accusing someone of stealing a half ounce of methamphetamine from him. Doc. 61 at 65. The interviewee stated they heard Medearis say "this is what I am missing" while holding up a bag containing 28 grams of methamphetamine. Doc. 61 at 65. The interviewee stated that he saw Medearis in a red Chevy Monte Carlo and India Ford in a separate gray or silver vehicle. Doc. 61 at 65. When India Ford attempted to leave, the interviewee reported seeing Medearis stab her tire with a sword preventing her from driving away. Doc. 61 at 65. India Ford then left with Medearis. Doc. 61 at 65. Eventually, Medearis returned and apologized to the people he accused of stealing because he had found his methamphetamine. Doc. 61 at 65.

Based upon the above, the affidavit was sufficient to establish probable cause that law enforcement would find evidence of contraband or crimes at the residences inhabited by Medearis.[4] The affidavit contained more than "mere conclusory statements." Gates, 462 U.S. at 239. Rather, the affidavit contained accounts by different individuals that Medearis and India Ford

---

[4] This Court has discussed in the Leon good-faith section the shortcoming in the affidavit to link Medearis and his activities to the Robert Medearis home.

were involved in distribution of methamphetamine and that Medearis often possessed a firearm. "[W]here one informant's tip corroborates another informant's tip, the reliability of their information increases." United States v. Davis, No. 5:15-CR-267-FL, 2016 WL 884653, at *4 (E.D.N.C. Mar. 8, 2016); see also United States v. Fulgham, 143 F.3d 399, 401 (5th Cir. 2009) (holding reciprocally corroborative information is enough to support a finding of probable cause); United States v. Muse, No. 98-4064, 1998 WL 726750, at *2 (4th Cir. Oct. 16, 1998) (per curiam) ("The information in the affidavit in this case was reliable. . . . [F]our informants told authorities about [the defendant]'s criminal activities . . . . Thus, the informants corroborated each other's stories that [the defendant] was engaging in criminal activity at his residence."). While some of the accounts are general or second-hand, at least one first-hand account placed Medearis with a large amount of methamphetamine while exhibiting erratic and dangerous behavior. See Gates, 462 U.S. at 234 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."). Other accounts indicated personally seeing and/or being threatened by Medearis with guns.

Medearis challenges whether Dillon's affidavit established a sufficient nexus between the residences and drug trafficking to justify probable cause to search them. Although the Eighth Circuit has not adopted a "per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that . . . evidence of drug trafficking exists at the trafficker's residence, [the court has] found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity." United States v. Moya, 690 F.3d 944, 948 (8th Cir. 2012); see also Mayweather, 993 F.3d at 1041 (stating that because law enforcement

possessed information that defendant was distributing cocaine, the "issuing judge could reasonably infer that evidence of cocaine distribution would be at [defendant's] residence"); (United States v. Ross, 487 F.3d 1120, 1123 (8th Cir. 2007) (listing cases supporting finding probable cause to search the residence of a drug trafficker based on association with drug trafficking). Based on the totality of the circumstances—i.e., the multiple accounts by different individuals that Medearis and India Ford were involved in drug trafficking, seizure of drugs from a vehicle shortly after it left the Medearis/Ford residence and reports that Medearis possessed guns—there was sufficient information contained within the affidavit for the issuing judge to support finding probable cause existed to search Medearis's residences.[5]

Law enforcement had arguably "at least partially corroborated" the presence of illegal drugs at the Medearis/Ford residence in South Antelope on April 19, 2020, when they stopped an individual who was seen leaving Medearis and India Ford's residence and found three grams of marijuana and a mirror with white residue that tested positive for methamphetamine. While law enforcement did not establish the reliability of the witnesses in the affidavit, "where the informants' information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause." United States v. Humphreys, 982 F.2d 254, 259 (8th Cir. 1992). Additionally, while one account was phrased in language that was arguably hearsay, that is not dispositive so long as there is a "substantial basis for crediting the hearsay." United States v. Ventresca, 380 U.S. 102, 108 (1965) (cleaned up and citation omitted).

Medearis also contends that the warrant lacked particularity—specifically, that the warrant was "overbroad." Doc. 39 at 7. "To satisfy the particularity requirement of the Fourth

---

[5] Again, this Court has addressed above the issue of the absence of information linking Medearis's alleged criminal activities to Robert Medearis's home in the Leon good faith section.

Amendment, the items to be seized and the places to be searched must be described with sufficient particularity as to enable the searcher to locate and identify the places and items with reasonable effort and to avoid mistakenly searching the wrong places or seizing the wrong items." United States v. Gleich, 397 F.3d 608, 611 (8th Cir. 2005).   Courts consider the totality of the circumstances to determine whether there was probable cause sufficient to support the breadth of a warrant. United States v. Hernandez, No. 09 CR 625 (HB), 2010 WL 26544, at *8 (S.D.N.Y. Jan. 6, 2010); Gates, 462 U.S. at 239.   "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999).  "A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time that the warrant is issued." Id.

Medearis contends that the warrant was overbroad because the affidavit does not establish why the two residences should be searched.  Doc. 39 at 7-8.  As discussed above, the affidavit establishes a likelihood of drug trafficking at Medearis/Ford's residence as well as information that Medearis possessed guns.  Doc. 61 at 59-73.  Although the failure of Dillion to include information about Medearis's activities on April 21 and 22 leaves the affidavit lacking in linking Medearis's alleged criminal conduct to his father's home, the Eighth Circuit's approach to the Leon good faith exception, as explained above, militates against suppressing the results of the search of Robert Medearis's home.

Medearis also challenges whether the warrant was specific enough in the items it listed to be searched.  Doc. 39 at 8.  The affidavit provided information on an investigation into drug trafficking and explained how certain items are related to drug trafficking.  Doc. 61 at 76.  All the items listed in the warrant to be searched and seized had an appropriate nexus to drug trafficking. See, e.g. United States v. Nieman, 520 F.3d 834, 839 (8th Cir. 2008) (rejecting an overbroad

challenge where the warrant "explained how such property was relevant to drug trafficking"); Horn, 187 F.3d at 788; (upholding a search when the items to be seized "had to be identifiably related" to a certain class of evidence); United States v. Peters, 92 F.3d 768, 769 (8th Cir. 1996) (holding that a warrant authorizing seizure of "any records or documents associated with cocaine distribution" covered audio cassette tapes); United States v. Coppage, 635 F.2d 683, 687 (8th Cir. 1980) (upholding a warrant when it requested access to "methamphetamine . . . any and all chemicals, chemical equipment, ... books, records, chemical equipment, and personal papers relating to the manufacture and distribution of methamphetamine and the purchase of component chemicals and equipment which are contraband and fruits and instrumentalities of the commission of a crime").

## B. <u>Franks</u> Hearing

In addition to seeking a hearing to establish whether probable cause existed for the search warrant, Medearis requests a <u>Franks</u> hearings to establish whether law enforcement intentionally or recklessly misrepresented or omitted certain facts in the affidavit. Doc. 45 at 2; <u>see</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978). "To receive a <u>Franks</u> hearing, a defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." <u>United States v. Gonzalez</u>, 781 F.3d 422, 430 (8th Cir. 2015) (cleaned up and citation omitted). "If the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." <u>Id.</u> (cleaned up and citation omitted). This "requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements." <u>Id.</u> "A showing of deliberate or reckless falsehood is not lightly met." <u>United States v. Butler</u>, 594 F.3d 955, 961 (8th Cir. 2010) (cleaned up and citation omitted). Mere allegations

are not enough. Mayweather, 993 F.3d at 1043. Nor is a showing of negligence or innocent mistake. Butler, 594 F.3d at 961.

Here, Medearis argues the warrant is tainted by "reckless or intentional omissions." Doc. 45. As the Report and Recommendation groups them, Medearis objects to the following omissions: (1) relationships between confidential informants, (2) substance abuse, health, and legal issues of some informants, (3) how long one informant resided in the Rosebud area, and (4) certain informants being unsure or having conflicting information about where Medearis resided. Docs. 59 at 10; 45 at 2-3.

"[R]eckless disregard for the truth may be inferred from the fact that . . . information was omitted." Gonzalez, 781 F.3d at 431 (cleaned up and citation omitted). Such an "inference is valid only when the defendant shows that the omitted material would be clearly critical to the finding of probable cause." Id. The test for reckless disregard "is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Butler, 594 F.3d at 961.

As the Report and Recommendation noted, it is unclear whether Dillon, the officer who prepared the search warrant and supporting affidavit, was even aware of the information Medearis claims proves reckless disregard. After all, Dillon relied on memorandas of interviews and discussions with fellow officers to prepare the affidavit, rather than listening to interview recordings. Dillon thus would have been unaware of subtle discrepancies in testimony or other matters like the substance abuse, health, and legal issues of certain informants. T. 52–58. Magistrate Judge Moreno found Dillon to be a credible witness who testified that he included those facts in the affidavit that he considered "pertinent to the investigation". Doc. 59 at 10; T. 60. This Court agrees with the Report and Recommendation's conclusion that none of the omissions on

which Medearis focuses were "critical to a finding of probable cause or the sort which would give an officer obvious cause to 'doubt the accuracy of the information he reported.'" Doc. 59 at 11 (citing Butler, 594 F.3d at 961).  Indeed, the substantive omissions by Dillon in his affidavit relate to the events of April 21 and 22, which if included would have made the case for issuance of the warrant even more compelling.

The affidavit's error referencing March 19 instead of April 19 does not equate to reckless disregard for the truth.  Butler, 594 F.3d at 961–62 ("A mere typographical error does not establish a deliberate falsehood, or a reckless disregard for the truth, nor does it cast doubt on the affidavit's showing of probable cause to search the residence.") (cleaned up and omitted).  In fact, the accurate date of April 19 would have likely enhanced probable cause by placing the events described closer in time to the request for a search warrant.  Consequently, Medearis's request for a Franks hearing is denied because he cannot show that "the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." Gonzalez, 781 F.3d at 431 (citation omitted).

### C. Miranda Issue

Medearis requests exclusion of the statements he made during his interview on April 27, 2020, arguing that they were obtained in violation of Miranda and thus involuntary under the Fifth Amendment.  Doc. 39 at 8-11.  Specifically, Medearis contends the presence of drugs in his system, his mental instability, and his neck wound made any statements involuntary.  Doc. 39 at 9.

Miranda held that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  384 U.S. at 444.  To protect suspects against the "inherently compelling pressures" of custodial interrogation,

the Supreme Court of the United States has held that the accused "must be adequately and effectively apprised of his rights," including the right to remain silent. Id. at 467–68. If the accused invokes his rights, "the exercise of those rights must be fully honored" and "the interrogation must cease." Id. at 467, 474. To effectively invoke the right to remain silent, the accused must do so "unambiguously." Berghuis v. Thompkins, 560 U.S. 370, 381 (2010). As the Eighth Circuit has stated, "[t]o adequately invoke [the right to remain silent] and effectively cut off questioning, a suspect must indicate a clear, consistent expression of a desire to remain silent." United States v. Adams, 820 F.3d 317, 323 (8th Cir. 2016) (cleaned up and citation omitted). On the other hand, an "ambiguous or equivocal" invocation of the right to remain silent is no invocation at all. Berghuis, 560 U.S. at 381–82.

The validity of a Miranda waiver—either express or implied—depends on whether the waiver was both "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. In sum, a court may conclude that a defendant has waived his Miranda rights "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension." United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994) (quoting Moran, 475 U.S. at 421). Examination of the totality of circumstances includes, but is not limited to, such considerations as the "background, experience, and conduct" of the defendant. Id. (cleaned up and citation omitted). "[T]he State need prove waiver only by a preponderance of the evidence." Colorado v. Connelly, 479 U.S. 157, 168 (1986).

### 1. Coercion

As the Report and Recommendation outlines and this Court's review of the interview confirms, Medearis did not face the type of coercive environment that would constitute a violation of his Fifth Amendment rights. Doc. 59 at 20. Law enforcement officers Estes and Antman started the interview by reading Medearis his Miranda rights and collecting basic biographical information. Ex. 21 at 00:00-03:33. Medearis orally agreed to speak with the officers outside the presence of an attorney. Ex. 21 at 04:20-04:25. The officers informed Medearis that he could end the interview at any time. Ex. 21 at 04:40-04:43. When Medearis exhibited signs of discomfort because of his neck injury, the officers offered to postpone the interview. Ex. 21 at 05:44-05:52 ("Do you want to talk to us later on today? You want us to come back later on today? It's up to you."). Medearis responded, "let's just talk, let's go." Ex. 21 at 05:54-05:56. He then initialed the waiver form and spoke with the officers who questioned him about his alleged use of drugs and possession of firearms. Exs. 18, 21 at 05:56-06:20.

This Court agrees with Magistrate Judge Moreno's assessment that Medearis sounded lucid and in control on the audio recording of the interview. Doc. 59 at 21. He was not subjected to any threats or strong-arm tactics that would have rendered his Miranda waiver to be involuntary. T. 131–132, see United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011) (holding a waiver valid when "[t]here [wa]s no showing [the defendant] was intimidated, coerced, or threatened by the police prior to or during his interview at the police station").

Medearis claims his drug use disqualifies his waiver, but intoxication by itself does not automatically render a statement involuntary. United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008). Rather, the test is whether the defendant's substance use caused the defendant's will to be overborne. Id. The Eighth Circuit has found waivers to be valid even when the defendants were under the influence so long as the defendants appeared sober and as though they understood their

rights. See United States v. Confreres, 372 F.3d 974, 977–78 (8th Cir. 2004) (upholding the district court's finding of waiver when the defendant had used methamphetamine the evening prior and marijuana the day of); United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990) (upholding the district court's finding of waiver where the defendant had not slept for five days and was under the influence of methamphetamine). The interviewing officers testified that they were not aware of drugs in Medearis's system either through the test administered or by his behavior. T. 98, 100.

Moreover, the totality of circumstances, including Medearis's background, experience, and conduct, reveal that Medearis comprehended his Miranda rights and made the uncoerced decision to waive them. Medearis is no stranger to the criminal justice system having plead guilty and been convicted of distribution of controlled substances in 2006, United States v. Patrick Kevin Medearis, 3:06-cr-30044-RAL-1, child abuse and neglect in 2010, United States v. Patrick Medearis, 3:10-cr-30015-RAL, and assaulting, opposing, resisting, and impeding a federal officer, and simple assault in 2017, United States v. Patrick Medearis, 3:16-cr-30006. He talked voluntarily with the officers and had enough awareness to deny involvement in certain aspects of distributing controlled substances. Ex. 21 at 10:38–11:00, 11:02–15:40, 17:04–18:25, 21:00–21:33, 22:10–23:09, 29:50–30:10, 30:40–32:18, 33:25–35:02, 35:02–37:38. He repeatedly denied possessing or firing a gun. Ex. 21 at 9:20–10:35, 11:02–15:40; 15:50–17:00, 11:02–15:40, 16:25–17:00, 18:26–19:19, 23:57–26:16, 29:50–30:10, 33:25–32:18, 33:25–35:02, 37:49–38:33. Based on the totality of the circumstances including Medearis's background, experience, and conduct, Medearis's will was not overborne by law enforcement in violation of his Miranda rights.

### 2. Voluntariness

Medearis objects to the Report and Recommendation's finding that his statements were voluntary. Doc 59 at 24. Determining whether a statement is voluntary involves similar

considerations for determining whether a waiver is valid.  A statement is made voluntarily when it is "the product of a rational intellect and a free will." Mincey v. Arizona, 437 U.S. 385, 398 (1978) (cleaned up and citation omitted).  On the other hand, a "statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. Boslau, 632 F.3d 422, 428 (8th Cir. 2011) (quoting United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc)).  To determine whether a statement is voluntary, courts must consider the "totality of circumstances," including the "conduct of the officers and the characteristics of the accused." Wilson v. Lawrence Cnty., 260 F.3d 946, 952 (8th Cir. 2001).  For example, the Eighth Circuit has considered, "among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

This Court concludes that Medearis's statements were made voluntarily for the same reasons that this Court concluded his waiver was valid.  The officers questioning Medearis did not engage in coercion; they did not raise their voices at Medearis, intimidate or threaten Medearis, or brandish their weapons. Ex. 21; T. 131–132. Medearis's will was not overborne nor were his statements coerced by law enforcement.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Medearis's Objection to the Report and Recommendation, Doc. 64, is overruled. It is further

ORDERED that the Report and Recommendation for Disposition of Motion to Suppress and Request for <u>Franks</u> Hearing, Doc. 59, is adopted. It is further

ORDERED that Medearis's Motion to Suppress, Doc. 38, and Supplemental Motion to Suppress and Request for Frank's Hearing, Doc. 45, are denied.

DATED this 7th day of January, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE